## PRUDENTIAL INS. CO. OF AMERICA v. ARFLACK et ux.

### No. 6858.

Circuit Court of Appeals, Sixth Circuit.
March 6, 1936.

Roy M. Shelbourne, of Paducah, Ky. (Wheeler, Wheeler & Shelbourne and James G. Wheeler, all of Paducah, Ky., on the brief), for appellant.

T. S. Waller Jr., of Paducah, Ky. (Nunn & Waller, of Paducah, Ky., and Postlethweight & Postlethweight, of Marion, Ky., on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Bill in equity to cancel an insurance policy for $5,000 issued by appellant, the Prudential Insurance Company of America, on March 19, 1931, on the life of appellee, William Earl Arflack. The wife, Rosa M. Arflack, as beneficiary of the policy, was joined. Appellant alleged that insured made material misrepresentations in his application for the policy.

Insured answered and by way of counterclaim sued under the policy to recover monthly payments of $50 for total, permanent disability dating from May 15, 1932.

From August, 1929, insured was a mail carrier between Tolu and Marion, Ky., and used a motortruck in this service. On May 15, 1932, he backed the truck against a street curb, and while it was standing there a passing truck caught the right side of his bumper, pulled it around to the left, dragged it thirty or forty feet, threw the insured from the cab, and in some way cut a gash about an inch deep in his right ankle. This injury was the basis of insured's claim for disability benefits.

In the application, made a part of the policy, the insured answered questions 6B, 6D, 6F, and 6E under the heading "Declarations made to the Medical Examiner," as follows:

"6. Have you ever * * *

"B. Received a severe injury? Yes.

"D. Had medical or surgical treatment in a hospital or sanitarium? Yes. If yes, medical or surgical? Surgical.

"F. Give full history (dates, nature of illnesses, time disabled and results). Broken leg in Sept., 1925, in hospital 58 days. Walker Hospital, Evansville, Ind. · Recovery complete. I have a good leg.

"E. Do the answers to questions 6A, B, C, D and F constitute a complete statement of all of the severe illnesses, surgical operations and hospital or sanitarium treatments which you have ever had? Yes."

The injury referred to in the answer to question 6F actually occurred in September, 1926, but appellant concedes that the date is not material. What it did claim was that the full history of the leg injury in 1926 was not given in the answer to question 6F, that the consequences of the injury occurring in 1932 were due to conditions persisting from the first injury, and that had it known the facts it would have rejected Arflack's application.

The District Court denied cancellation. It held that the evidence not only failed to show that the answer to question 6F was false, but, upon the contrary, established that it was substantially true.

A résumé of the evidence is necessary.

It is undisputed that in September, 1926, insured caught his foot in a hay baler and received a compound fracture of the right leg between the knee and ankle, that the flesh was torn for four inches in the middle third, where the bone stuck through the flesh. Doctors Cook and Driskell gave him temporary treatment and sent him to a hospital, where he remained about two months. Skin was grafted on the wound, but it was still discharging pus when insured returned home. About March 1, 1927, Dr. Cook opened the place and removed a piece of bone about an inch long. On the next day another small piece of bone came out, and there was no discharge of pus thereafter.

To support its contention, appellant introduced the testimony of three physicians.

Dr. Baker testified that he treated the insured on November 23, 1932; that his right foot and ankle were red, moderately swollen and tender to pressure, and that the scar in the middle of the leg was very red and tender. He made an X-ray which he interpreted as showing osteosclerosis, an extensive deposit of new bone in the line of the fracture of 1926, but disclosing no evidence of disease in the ankle or instep. His opinion was the insured's suffering in his right foot and ankle in November, 1932, was due partly to atrophy and partly to restricted circulation by reason of extensive scarring and obliteration of blood vessels and lymph glands, necessitated by the treatment of the injury in 1926 in order to provide drainage, and that the symptoms shown by insured were not related to the injury occurring in 1932 but developed as the result of the previous injury.

Dr. Allenbaugh, who treated insured at the hospital in 1926, testified that there was a crushing injury to the leg to the depth of the bone; that infection had developed and that four tubes were anchored in the wound through which antiseptic fluids were injected. He saw the leg in 1932 after the second injury, when insured complained of pain in the lower part of his leg and foot and of an open sore below the old scar. An X-ray was taken and he interpreted it as showing an osteosclerosis due to infection dating back to 1926 and that the contracting effect of the scar tissue interfered with the return flow of lymph and blood after 1932 and caused the swelling, inflammation, and sensitiveness then obtaining in the tissues.

Dr. Wynn testified that he saw insured both in 1926 and 1932, and that on the latter occasion he had "a badly swollen ankle and tenderness over the ankle and into the foot." He was of the opinion that the contracting effect of the scar tissue of the old injury plus the gas bacilli infection resulting in destruction of blood vessels and lymph glands had a tendency to cut down circulation in the foot and ankle as observed in 1932.

Upon the other hand, insured testified that he did not use crutches after February, 1927; that in 1927 he drove a team, hauling spar for a mining company; from 1927 to 1932 he engaged in all types of heavy farm work; that his leg was never sore nor red and that he never limped during those years; that while carrying the mail he used the truck for all kinds of freight, such as heavy barrels of oil and cans of kerosene, which he himself loaded; that he used his right leg to apply the brakes without any sensation of soreness. His testimony that he had recovered from the injury of 1926 is confirmed by six witnesses, neighbors, and acquaintances. Some testified to seeing him at work as a truck driver, handling ice, mail, gasoline engines, cans of meal, etc., weighing up to 200 pounds; that his movements were normal and that he did not limp or complain.

Dr. Shemwell, who examined insured in April, 1933, and took an X-ray, was of the opinion that his troubles were due to the second accident; that they were the result of a sprain, the destruction of the soft tissue and tearing of the ligaments; that when the drainage and tubes were removed after the first injury the impairment of the circulation, as the result of scar tissue, would have lessened and gradually disappeared. He was of the opinion that there was no osteomyelitus of the sclerosing type in April, 1933, and that appellant's witnesses were wrong in reading into the X-rays of June and November, 1932, the existence of any such condition.

Dr. Driskell, who examined Arflack for the policy on March 23, 1931, testified that his physical condition was then good, that there was no tenderness or discharge, that the scar tissue looked healthy and that his leg looked permanently cured. In his confidential report to appellant he answered "Yes" to the question, "Is the person examined free from physical and mental defects and in good health?"

Dr. Lowry, who treated insured for the injury of 1932, saw him at his work almost daily before his injury and testified that he handled himself normally and was of the opinion that his disability was due to the injury in 1932.

From this evidence considered in the aggregate, we conclude that there was no error in the denial of cancellation. Only one of the three physicians introduced by appellant examined insured within six months after the second injury. Their conclusions, drawn from the X-rays made in 1932, that insured's trouble resulted from or dated back without a break to the injury in 1926, is not convincing in view of the evidence that the old wound had healed after the two pieces of bone were removed in 1927 and that from then until the acci-

dent in 1932 Arflack had engaged in hard physical labor without the slightest pain or inconvenience. Arflack's answer to question 6F to wit, "Recovery complete, I have a good leg," was not shown to be false. It was essentially true.

We need not dwell upon the testimony tending to show that insured was totally and permanently disabled. The weight of the evidence established that he was. In fact, appellant has not seriously contended otherwise. We think his condition arose out of and commenced with the accident of May 15, 1932, and is covered by the policy.

Appellant contends that insured is not entitled to recover disability payments because he never gave appellant "written notice of disability" or furnished "due proof that total disability exists and that such disability is permanent * * *" as required by the policy. The point is without merit. We agree with the District Court that the counterclaim and the evidence in support of it were sufficient notice and proof.

The District Court allowed recovery of monthly disability payments from May 15, 1932. The policy provided, however, that the payments should begin "at the end of four months from the commencement of such total disability, provided that no such monthly income shall be paid for any part of the first three months of such total disability or for any fractional part of a month thereafter. * * *" Under this provision, nothing was due appellee until September 1, 1932, but the payments should begin October 1, 1932, and cover the month of September and succeeding months.

The decree is modified accordingly, and, as so modified, is affirmed.